[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTIONS FOR ORDERS OF COMPLIANCE (#117 and #118)
On April 18, 1990, the plaintiffs, Ronald Short and Catherine Short, as administrators of the estate of Jessica Short; and Catherine Short and Tanya Short, both individually, filed a three count complaint against the defendant State of Connecticut. In the first count, the plaintiffs allege that David Peterson, while a patient at Connecticut Valley Hospital, and under the control of the defendant State, left the hospital and killed Jessica Short. The plaintiffs allege that Jessica Short's death was caused by the negligence of the defendant State in that the defendant failed to adequately control Peterson. The plaintiffs seek the recovery of wrongful death damages and funeral and burial expenses.
In the second and third counts, respectively, plaintiffs Catherine Short and Tanya Short seek recovery for emotional distress damages.
Before the court are two motions for order of compliance filed by the plaintiffs. The first motion for order of compliance (#117), seeks an order from the court requiring that the defendant answer interrogatories and respond to requests for production with respect to statements and investigations developed during a peer review process at Connecticut Valley Hospital. CT Page 5108
The second motion for order of compliance (#118), requests that the court order the defendant to respond to requests for the production of Peterson's medical records.
In objecting to motion #117, the defendant argues that the motion should be denied because the plaintiff is seeking the discovery of statements and investigations developed during a peer review process, and claims that General Statutes 19a-17b(d) prohibits the discovery of such material.
The plaintiffs argue that 19a-17b(d) is only applicable to civil actions against "health care provider[s]," and the defendant is not a "health care provider" pursuant to the statutory definition of this term.
In relevant part, General Statutes 119a-17b(d) states: "The proceedings of a medical review committee conducting a peer review shall not be subject to discovery . . . in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee. . . ."
"Health care provider" is defined by General Statutes 19-17b(a) (i) as being "any person, corporation, facility or institution licensed by this state to provide health care or professional services. . . ."
General Statutes 19-a-490, et seq., govern the licensing of health care institutions. Section 19a-490(a) defines an "institution" as ". . . including facilities operated and maintained by any state agency, except facilities for the care or treatment of mentally ill persons. . . ."
Pursuant to General Statutes 17a-450 and 17a-458(b) Connecticut Valley Hospital is a state operated facility which provides treatment for mentally disordered adults. Pursuant to the statutes cited above, it appears that Connecticut Valley Hospital is not a "health care provider" as this term is defined by 19a-17b(a)(i). Accordingly, peer reviews conducted by Connecticut Valley Hospital are not shielded from discovery by General Statutes 19a-17b(d), and therefore the plaintiffs' motion for order of compliance (#117) is granted.
With respect to motion for order of compliance #118 the defendant argues that that motion should be denied because General Statutes 52-146c-f requires that communications and records concerning the psychiatrist/patient relationship must remain confidential. Hence, the defendant argues that it may CT Page 5109 not properly be required to produce Peterson's medical records, which it claims are all privileged by statute.
The plaintiffs claim that the motion should be granted because Peterson used portions of his medical record at his criminal trial, that these portions of his record are available to the public, and that both parties in the present case already possess copies of these portions of his record. Further, the i plaintiffs argue that Peterson's use of portions of his medical record constitutes a waiver of the confidentiality of the entire record. Alternatively, they argue that there are portions of the medical record which are not privileged and such records must be produced.
General Statutes 52-146e(a) provides for the confidentiality of psychiatrist/patient communications:
 All communications and records . . . shall be confidential. . . . [N]o person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient.
Communications and records" are defined as "all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and psychiatrist, . . . or between . . . such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility[.]" General Statutes 52-146d(2).
General Statutes 52-146c provides the same confidentiality for communications made in the course of treatment by psychologists.
It is the plaintiff's position that Peterson's use of portions of his medical record in his criminal trial constitutes a waiver of his right to the confidentiality of his entire medical records. However, in State v. Pierson, 201 Conn. 211,223, 514 A.2d 724 (1986), the Supreme Court held that waiving the confidentiality of portions of a psychiatric record does not constitute an implied waiver of the confidentiality of the entire psychiatric record. This court finds that Peterson did not waive his privilege as to the psychiatric records not used at his criminal trial, and therefore those records remain confidential. CT Page 5110
Finally, the plaintiffs argue that records relating to Peterson's "custody, security, levels of privilege, whereabouts, staff observations of conditions, administration of medication, etc." must be disclosed because they are not within the 52-146d(2) definition of privileged "communications and records." However, this section defines "communications and records" as including "all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition. . . ." In Lieb v. Department of Health Services,14 Conn. App. 552, 542 A.2d 741 (1988), the court held that the confidentiality statutes required the quashing of a subpoena which sought "complete patient records . . ., relevant medical records, notes, medication sheets, and medical releases . . ." because they were within the definition of "communications and records." Id., 555. It is the opinion of this court that Peterson's records relating to his "custody, security, levels of privilege, whereabouts, staff observations of conditions, administration of medication, etc." are "communications and records" and are not disclosable.
Accordingly, the plaintiffs' motion for order of compliance (#118) is granted as to records publicly disclosed at Peterson's criminal trial. The motion is denied as to all other psychiatric records.
WILLIAM L. HADDEN, JR., JUDGE